UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:21-cr-00549-ABJ |
| v. : | |
| : | |
| TANNER BRYCE SELLS, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Tanner Sells to 14 days incarceration, followed by 36 months of probation, 60 hours of community service, and $500 restitution.[1]

**I.   A Sentence Imposed for a Violation of 40 U.S.C. § 5104(e)(2)(G) May Include Both Incarceration and Probation**

The United States notes that this Court has expressed some skepticism toward a sentence in petty offense cases that includes both incarceration and probation—sometimes called a "split sentence". *See United States v. Russell J. Peterson*, Case No. 21-cr-309, sentencing transcript at 11:12-15 (Dec. 1, 2021) ("And the Court has a binary choice, even between a short-term of incarceration and some of those [probation] services. And it's a frustrating aspect of the Class B misdemeanor..."). This skepticism appears to stem from some language used by Chief Judge Howell in her sentencing decision in *United States v. Eric Chase Torrens*, Case No. 21-cr-204-02.

---

[1] Should the Court reject the government's split sentence recommendation, the government respectfully requests that the Court sentence the defendant to 36 months of supervision with a condition of the supervision to include three months of home detention, 60 hours of community service, and $500 restitution.

1

However, Chief Judge Howell made clear she was not ruling on the permissibility of split sentences in petty offense cases:

> …I have been trying to think through the split sentence issue; and there may come a case where that issue will have to be resolved by the judge. And it may resolved by me -- not in this case, and not in the case yesterday…. [U]ltimately, I did not have to resolve the issue of whether a split prison probation term is allowed under Section 3561(a)(3); but at least I now know that's a big issue.

Tr. at 24:25-25:11 (Nov. 6, 2021).[2]

Under 18 U.S.C. § 3561, a defendant "may be sentenced to a term of probation unless . . . the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense that is not a petty offense." 18 U.S.C. § 3561(a)(3). Section 3561(a)(3) thus states the general rule that "imposition of both probation and straight imprisonment" in the same sentencing hearing is not permitted. *United States v. Forbes*, 172 F.3d 675, 676 (9th Cir. 1999); *see United States v. Harris*, 611 F. App'x 480, 481 (9th Cir. 2015); *United States v. Anderson,* 787 F. Supp. 537, 539 (D. Md. 1992).

This general prohibition against sentences that combine continuous incarceration and probation does not apply, however, where the defendant is sentenced for a petty offense. *See* 18 U.S.C. § 3561(a)(3); *United States v. Posley*, 351 F. App'x 801, 809 (4th Cir. 2009). In *Posley*, the defendant, convicted of a petty offense, was sentenced to two years of probation with the first six months in prison. *Posley*, 351 F. App'x at 808. In affirming that sentence, the Fourth Circuit concluded that Section 3651(a)(3) "[u]nquestionably" provided statutory authority to sentence the

---

[2] During the sentencing in *Peterson*, defense counsel appears to have mistakenly argued that Chief Judge Howell had ruled on the split-sentence issue ("I believe -- I was not counsel in the *Torrens* case, but I believe that the Chief said otherwise, and had said it is not appropriate," *see Torrens* Nov. 6, 2021 Sentencing Tr. at 10:11-14). As the transcript from *Torrens* makes clear, Chief Judge Howell explained that she was not reaching the question and expressly declined to rule on the split-sentence issue.

petty-offense defendant to "a term of six months of continuous imprisonment plus probation." *Id.* at 809. Permitting a combined sentence of continuous incarceration and probation for petty offenses is sensible because sentencing courts cannot impose supervised release on petty-offense defendants. See 18 U.S.C. § 3583(b)(3); *United States v. Jourdain*, 26 F.3d 127, 1994 WL 209914, at *1 (8th Cir. 1994) (unpublished) (plain error to impose a term of supervised release for a petty offense). It follows that a sentencing court may impose a combined sentence of incarceration and probation where, as here, the defendant is convicted of a petty offense.

## II.     Introduction

Defendant Tanner Sells participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars of property damage.

Sells pleaded guilty to one count of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. As explained herein, the recommended sentence is appropriate in this case because (1) Sells's criminal history; (2) he witnessed and filmed violence between rioters and law enforcement officials—specifically tear gas being deployed; (3) he nevertheless entered the U.S. Capitol with a large crowd; and (4) he went inside the Rotunda where he filmed himself. Sells exited the building in less than 10 minutes. He later posted the videos to his Facebook account. As of the date of this filing he has not expressed remorse for his actions.

The Court must also consider that Sells's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions

alongside so many others, the riot likely would have failed to delay the Electoral College certification vote. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). Here, Sell's participation in a riot that actually succeeded in halting the Congressional certification combined with the defendant's criminal history renders the recommended sentence both necessary and appropriate in this case.

### III.   Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* Sells's Statement of Offense. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the Sells's conduct and behavior on January 6.

*Tanner Sells' Role in the January 6, 2021 Attack on the Capitol*

Tanner Sells traveled to Washington D.C. and participated in the attack on the Capitol on January 6, 2021. On that day, he wore a dark baseball hat and a black jacket. Upon arriving at the Capitol grounds, Sells began recording videos on his phone.

For example, Sells took a video just outside the Capitol before entering. The video depicts a crowd of rioters pushing to enter an open door. The audio on the video captures the Capitol door alarm blaring, people screaming, chanting, and blowing airhorns. It is believed that this is the door Sells entered. At one point before entering, Sells turns the camera to the right and captures another

crowd in the distance confronting law enforcement.  Someone near Sells (or Sells himself) yells "That's tear gas!"

 

The next videos show Sells entering the building and walking up stairs into the Rotunda. Sells also recorded himself inside the Rotunda.  He exited the building approximately 10 minutes after entering.  The United States has no evidence that Sells engaged in any violence, destroyed any property, confronted any law enforcement, or destroyed any evidence.

With the potential exception of saying "That's tear gas!" (again, it is not clear that Sells was the person who said those words), it does not appear that Sells made any statements during his recordings. Sells posted these videos from the Capitol to his Facebook account with the caption "For anyone that wants to know what's going on in dc".

On the day of the riot, Sells texted an individual the following two images from his phone with accompanying comments: "Inside the capital" [sic].



"Off the steps of the capital" [sic].



The government notes that in comparing Sells with other riot defendants, Sells is uncommonly taciturn in his social media posts and communications on his cell phone. His Facebook page is basic. It appears he mostly used Facebook for business. Information gleaned from his Facebook account and cell phone do not reveal much about the intent behind his actions on January 6th.

*The Charges and Plea Agreement*

On May 12, 2021, Sells was charged in a criminal complaint with knowingly entering or remaining in any restricted Capitol building or grounds without lawful authority. Sells was arrested in the Western District of Oklahoma where he made his initial appearance on May 17, 2021. Sells was released with pretrial conditions. On September 27, 2021, he pleaded guilty to a one count misdemeanor information charging a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building.  By plea agreement, Sells agreed to pay $500 in restitution.

### IV. Statutory Penalties

Sells now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Sells faces up to six months of imprisonment and a fine of up to $5,000. Sells must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### V. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, all of the Section 3553(a) factors weigh in favor of the recommended sentence.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms. Indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, as we now discuss, this Court should note that each person who entered the Capitol on January 6 without

authorization did so under the most extreme of circumstances. As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting between the rioters and law enforcement officials and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment. Had Sells personally engaged in violence or destruction, he would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of Sells is therefore not a mitigating factor in misdemeanor cases.

Again, Sells observed a violent crowd being tear gassed before entering the Capitol building through a door which had a blaring alarm. He entered along with others who were screaming, chanting, and blowing airhorns. He remained in the building for less than 10 minutes. He traveled with a large crowd into and out of the Rotunda. He posted videos of himself entering

9

and inside the Capitol to Facebook, stating: "For anyone that wants to know what's going on in dc". Other than pleading guilty, Sells has yet to express remorse or contrition for his conduct on January 6.

Accordingly, the nature and the circumstances of this offense establish the clear need for the recommended sentence in this matter.

### B. Sells' History and Characteristics

As set forth in the PSR, Tanner Sells' criminal history consists, *inter alia*, of the following:

- conviction for "Trans. open container of intoxicating beverage or low-point beer" (03/29/2016)
- conviction for "Person under 21, poss. consume/purch low-point beer" (03/29/2016);
- dismissed charge of "Domestic abuse—assault and battery" (12/04/2019);
- conviction of Disorderly Conduct (02/03/2020);
- plea of no contest to Public Drunkenness (12/10/2020); and
- guilty plea to Public Intoxication (2020)

This criminal history is concerning and puts Sells in a different category than other January 6th defendants. Sells has been compliant with his conditions of pre-trial release in this case.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[3] As with the nature and circumstances of the offense, this factor the recommended sentence, as it will in most cases, including misdemeanor cases, arising out of the

---

[3] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence weigh in favor of the recommended sentence, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose the recommended sentence. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that

11

democracy stands as the immutable foundation of this nation." *Id.* at 70; *see United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37 ("As other judges on this court have recognized, democracy requires the cooperation of the citizenry. Protesting in the Capitol, in a manner that delays the certification of the election, throws our entire system of government into disarray, and it undermines the stability of our society. Future would-be rioters must be deterred.") (statement of Judge Nichols at sentencing).

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Sells' entrance into the Capitol despite the fact that law enforcement was deploying tear gas to stem the rioters and his social media posts clearly demonstrate that the sentence in this case should deter him from future criminal conduct. As of the date of this filing, Sells has not expressed remorse for his unlawful conduct on January 6.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with

Congress.[4] Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not become the default.[5] Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19; *see also United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 ("Judge Lamberth said something to the effect . . . 'I don't want to create the impression that probation is the automatic outcome here, because it's not going to be.' And I agree with that. Judge Hogan said something similar.") (statement of Judge Friedman).

The government and the sentencing courts have already begun to make meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment.

---

[4] Attached to this supplemental sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[5] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

Those who trespassed and engaged in aggravating factors merit serious consideration for incarceration. Those who trespassed, but engaged in less serious aggravating factors, deserve a sentence more in line with minor incarceration or home detention.

The charge to which Sells pleaded guilty is offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C § 3553(6), do apply, however.

For one thing, although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long a defendant remained inside, the nature of any statements she made (on social media or otherwise), whether a defendant destroyed evidence of his participation in the breach, etc.—help explain the differing recommendations and sentences. And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Moreover, assessing disparities, and whether they are unwarranted, requires a sufficient pool of comparators. In considering disparity, a judge cannot "consider all of the sentences not yet imposed." *United States v. Godines*, 433 F.3d 68, 69–71 (D.C. Cir. 2006). "The most a judge can do is consider those other sentences that do exist," and "[t]he comparable sentences will be much

14

smaller in the early days of any sentencing regime than in the later." *Id.*; *see generally United States v. Accardi*, 669 F.3d 340, 346 (D.C. Cir. 2012) ("Without more, two allegedly similar cases constitute too small a sample size to support a finding of an 'unwarranted disparity' in sentences."). In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id.* ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6)."). Because the Sentencing Guidelines do not apply here, the sentencing court cannot readily conduct a disparity analysis against a nationwide sample of cases captured by the Sentencing Guidelines.

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court may consider the 14-day sentence imposed by Judge Chutkan on defendant Donna Bissey (1:21-CR-00165-TSC) for reference. In that case, the defendant was a 53-year-old hairdresser who had no criminal history, remained in a limited part

of the Capitol for a short period of time, did not appear to have destroyed property or evidence, cooperated with law enforcement after her arrest, and expressed remorse for her actions.

The Court may also consider the 30-day prison sentence imposed on Russell Peterson (1:21-CR-309-ABJ). In that case, this Court imposed a sentence of 30 days on a defendant who, on his way into the Capitol building stood mere feet away from rioters who were pushing and shoving law enforcement officers while aggressively yelling at them. After witnessing the violence, Peterson continued on and entered the building through the Senate Wing Door, while people were climbing through broken windows on either side of him. Once inside the Capitol, Peterson pulled out his phone and began live-streaming to Facebook. He told his viewers "So we took the Capitol. The Capitol is ours right now." Upon his arrest, Peterson likewise told the FBI he did not witness any violence at the Capitol.

The defendant in this case has a criminal history. The existence of a criminal history has supported a sentence of incarceration, as opposed to probation, for defendants charged with misdemeanors arising out of their participation in the attack on the Capitol. *See United States v. Lolos*, 1:21-cr-00243-APM (14 days of incarceration); *United States v. David C. Mish, Jr.*, 1:21-cr-00112-CJN (30 days of incarceration); *United States v. Robert L. Bauer and Edward E. Hemenway II*, 1:21-cr-00049-TSC (45 days of incarceration for each defendant); *United States v. Karl Dresch*, 1:21-cr-00071-ABJ (6 months of incarceration [time served]); *United States v. Michael Thomas Curzio*, 1:21-cr-00041-CJN (six months of incarceration [time served]). While many of the misdemeanor defendants that may come before the courts may have had not a single contact with the criminal justice system, Sells has numerous arrests and a number of convictions. That backdrop distinguishes the defendant from other defendants for whom this is their first and only contact with the criminal justice system.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

**VI. Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, some of those factors support the recommended sentence and some support a more lenient sentence. Balancing these factors, the government recommends that this Court sentence Tanner Sells to 14 days incarceration, followed by 36 months of probation, 60 hours of community service, and $500 restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his early acceptance of responsibility.

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY

By: *[signature]*
JACOB J. STRAIN
Utah Bar No. 12680
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530