IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-21-549 (ABJ) |
| ) | |
| TANNER BRYCE SELLS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN AID OF SENTENCING**

Tanner Sells submits the following memorandum in support of his request for a probationary term. A term of supervision would best effectuate the sentencing goals of 18 U.S.C. § 3553(a), particularly considering Mr. Sell's history and characteristics and minimal participation in the events of January 6, 2021. In further support of this request, Mr. Sells provides the following.

*Nature and Circumstances of the Offense*

The instant case is a small part of what has been described as one of the largest investigations and prosecutions in American history. (*United States v. Caldwell*, *Government's Motion to Continue*, Doc. 73, p. 2; CR-21-028 (D.D.C.)). Mr. Sells does not attempt to downplay the severity of the events of January 6, 2021, nor to minimize the historical significance of the violence and disruption in our nation's capital. Though it has been about one year since the counting of electoral ballots after the Election of 2020 was thrown into disarray, the fallout of January 6, 2021 will remain for some time to come.

Some of the thousands of individuals in Washington D.C. that day decided to use violence.  Likely, evidence will emerge that such violence was planned with the intent to disrupt Government functions.  Still others may have engaged in violence and destruction only after being swept up in a crowd mentality.  Many entered the Capitol Building on January 6, 2021 after others stormed the building and made entry.  Mr. Sells was one of those individuals who entered the U.S. Capitol Building in the maelstrom of activity that day.

Mr. Sells drove with members of his church to attend a political rally headlined by a President.  It was Mr. Sells' first trip to Washington, D.C.  He attended the rally located at the Ellipse south of the White House, specifically south of Constitution Avenue between 15th and 17th Streets.  This was his view of the rally.

 

It is probably unproductive to discuss the inflammatory nature of the rally and the comments of the speakers that lead to the assault.  Certainly, others have dissected the speeches and raised concerns that the rally incited the violence at the Capitol. While it may

not excuse the actions of individuals such as Mr. Sells, it helps explain how thousands of otherwise law-abiding American citizens marched nearly two miles to the United States Capitol Building demanding immediate action. What is clear is that Mr. Sells remained at the speech until its conclusion. He followed the masses of people walking to the Capitol down Pennsylvania Avenue.

Along with hundreds of other individuals, Mr. Sells entered the United States Capitol Building. He recorded his entire time inside on his cell phone. In his video, Mr. Sells is seen walking up the steps from the Upper West Terrace door to the Rotunda. He did not assist in defeating resistance into the building. He walks to the middle of the Rotunda and doubles back to the west side entrance. After standing next to a statue for a moment, he continues east through the Rotunda and down the stairs towards the exit. Mr. Sells is waiting for the crowd to clear before exiting the Capitol:

 

The video recorded on Mr. Sells' phone is less than four minutes long. Mr. Sells' actual time in the U.S. Capitol was little more than five minutes, including time walking up the stairs, time spent in the Rotunda, and waiting to leave out the east door. Notably,

3

Mr. Sells did not explore the Capitol beyond the Rotunda. Throughout the Capitol, there are stairs and hallways connecting to different parts of the building. Many of these corridors connect to the Rotunda. Mr. Sells did not wander about. He walked through the Rotunda and out.

At no point did Mr. Sells engage or incite any violence. He was silent during his time inside the Capitol. He did not chant with others, call for harm to come to anyone, or even remark about his presence within the Capitol. Mr. Sells did not damage any property. He came plain clothed, with no political messages. He did not carry a flag. Unlike many, Mr. Sells did not come with protective gear, such as padding, helmets, goggles, backpack, or body armor. He did not carry a radio or pepper / bear spray. He walked in an open door with no resistance, recorded himself traveling through the Rotunda, and exited out the East side. Mr. Sells remained outside for a few more minutes before he left the Capitol grounds and returned home. His time in the Capitol appears to be that of documenting his experience, rather than actively contributing to the chaos inside.

A look into Mr. Sells' social media postings on January 6, 2021 does not reveal someone proud and boastful of his role. Instead, Mr. Sells' captions show someone documenting the events. He titled his video, "For anyone that wants to know what's going on in dc[.]" His social media postings similarly do not demonstrate a cavalier attitude. He did not brag about his involvement.

Mr. Sells played a small role. To be sure, this small role, taken in the aggregate with the hundreds of others who acted in a nonviolent manner, contributed to the chaos and disorder resulting in the events of January 6. This information is offered merely to place

4

Mr. Sell's participation in the greater context. True enough, no one made Mr. Sells enter the Capitol building.

Mr. Sells is not proud of his participation in the events of January 6. At no point has he bragged or publicized his involvement. Mr. Sells has come to learn that even his minimal participation contributed towards a tumultuous and tragic event. He did not travel to Washington D.C. with the intent to storm the Capitol building or disrupt democracy. Mr. Sells regrets his actions and is ready to accept this Court's punishment.

*History and Characteristics of Mr. Sells*

Mr. Sells is a born and raised Oklahoman. He lives in Chandler, Oklahoma, a modest county seat with an approximate population of 3,000. Even as a relatively young man, Mr. Sells has built a stable construction business that specializes in building steel buildings. He did this without a college education. Mr. Sells briefly attended college before concluding he would prefer not to accumulate thousands of dollars in student loans. Instead, he learned construction and various trades within general contracting.

His job requires a wide variety of skills, including general construction knowledge, business management, and hard work. Mr. Sells frequently works all daylight hours in a day, arranging for delivery of construction materials and performing the construction tasks alongside his few employees. At present, he has two other people working for him. Each earn an hourly wage, working an average of 30 – 60 hours per week. They depend on Mr. Sells as their primary source of income. Both men have families to support and would be adversely impacted by any sentence of incarceration. Simply put, if Mr. Sells is

incapacitated (or placed on home detention) and cannot work, his employees are also unable to work.

Even with his long hours working, Mr. Sells also strives to be a loving father to his son. Currently, Mr. Sells enjoys weekend visitation with his child. He has daily Facetime calls with his son. These visits are incredibly meaningful to Mr. Sells. Despite the allegations (which were dismissed) in paragraph 33 of the PSR, Mr. Sells maintains a cordial and responsible co-parent relationship with the mother of his son. Should the Court sentence Mr. Sells to a period of incarceration, his son would be deprived of his presence.

Mr. Sells has also attached letters of support from his family and friends. These letters offer a vivid account of the respectful, loyal, and trustworthy characteristics of Mr. Sells. (Exhibits 1-10).

Mr. Sells has had prior, minor encounters with law enforcement largely centered on alcohol related offenses. Even though the sentencing guidelines do not apply, it is likely Mr. Sells would score in the lowest criminal history category due to only a single applicable criminal history point for a fine received for a consuming alcohol and transporting an open container when he was 20 years old. (PSR ¶ 23). Though he does not dispute his adjudication for transporting an open container, Mr. Sells was only a passenger in the truck – he was not driving. In February of 2020, he was cited for disorderly conduct and public drunkenness. (PSR ¶¶ 25, 26). With respect to the incident briefly described in paragraph 33 of the PSR, Mr. Sells notes this case was dismissed because an argument with the mother of his child was blown out of proportion. He voluntarily took classes, and the State of Oklahoma dismissed the case.

And while these contacts with law enforcement may differentiate Mr. Sells from some of the other defendants in the January 6 cases, it does not require the Court to impose a sentence other than probation.  Clearly, Mr. Sells had issues with alcohol as a young man. Importantly, however, he has engaged in substance abuse treatment with the United States Probation Office.  In the nearly eight months he has been on pretrial supervision, Mr. Sells has complied with his conditions of release.  He has maintained employment and refrained from any unlawful behavior.  Should the Court consider his past contacts with law enforcement as a reason to entertain a sentence of incarceration, Counsel submits the more appropriate approach is to impose a period of supervision to monitor Mr. Sells and ensure his continued compliance.  Indeed, 18 U.S.C. § 3553(a)(2)(D) directs the Court to consider, the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  To the extent Mr. Sells' prior history involving alcohol abuse is a concern for the Court, it should result in imposing supervision to ensure continued compliance.

*Other Sentencing Factors*

The Court must impose a punishment that is "sufficient, but not greater than necessary," to effectuate the policy objectives of Congress in 18 U.S.C. § 3553(a) and "to comply with the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S.Ct. 1170, 1175 (2017).  This "parsimony" clause is the "overarching provision" of the statute. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

Specific deterrence in this case does not appear to be a major factor. Mr. Sells does not require incarceration to protect the public from further crimes committed by him. However, general deterrence may be a concern for the Court. The Court may want to impose a sentence that would deter future individuals from committing the same or similar conduct. Respectfully, incarcerating Mr. Sells is not necessary to effectuate this sentencing objective. His arrest, prosecution, and supervision have clearly indicated to the public that the United States Government will investigate and prosecute these actions.

The factors in this case counsel in favor of a sentence of probation. A sentence of probation will reflect the seriousness of the offense. In *Gall v. United States*, 552 U.S. 38, 48-49 (2007), the Supreme Court noted that probationary sentences substantially restrict an offender's freedom. *Id*. ("Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty."). Probation results in a lengthier term of supervision and it is still a punishment requiring Mr. Sells to remain under conditions.

Should the Court disagree and conclude incarceration is necessary, Mr. Sells respectfully requests the Court impose intermittent weekend incarceration for consecutive weekends. This would likely permit Mr. Sells to operate his business with minimal disruption to his employees.

*Unwarranted Sentencing Disparities*

The Court is also required to consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). The following is a list of defendants convicted of 40

U.S.C. § 5104(e)(2)(G) who received a probationary sentence.  Mr. Sells' conduct is comparable to these defendants.  In fact, many of the defendants receiving probationary sentences engaged in more egregious conduct, including brazen social media posts about storming the Capitol, entering the Capitol among the first people inside, spending more time in places within the Capitol, smoking within the Capitol, entering through broken windows, and initially stating their actions were justified.  Counsel offers these other cases to illustrate some of the offense conduct in comparison to Mr. Sells.  Of course, this chart does not purport to place each defendant's criminal history in context, nor to discuss other differences.  Still, the range of conduct yielding probationary sentences in other cases strongly supports a probationary sentence for Mr. Sells.

| Case number | Sentence received | Statement of offense |
|---|---|---|
| CR-21-164-RCL<br>Anna Morgan-Lloyd | 36 months probation, 120 community service hours, $500 restitution | Entered Capitol building; appeared in photo, posted on social medical "I'm here.  Best day ever.  We stormed the capital building [and] were in the first 50 people in." Further social media posts indicating pride in taking part in events.  (Doc. 25, pp. 3-4). |
| CR-21-97-PLF<br>Valerie Ehrke | 36 months probation, $500 restitution | Entered Capitol at about 2:09 p.m., uploaded video to Facebook, "We made it inside, right before they shoved us all out.  I took off when I felt pepper spray in my throat! Lol." (Doc. 15, p.3). |
| CR-21-155-ABJ<br>Jacob Hiles | 24 months probation, 60 hours community service, $500 restitution | Entered the Capitol at 2:50 pm with googles to protect himself from tear has.  Also published photos and videos of him and a friend smoking an unknown substance. (Doc. 24, pp. 3-4) |

| | | |
|---|---|---|
| CR-21-324-TNM<br><br>Danielle Doyle | 2 months probation, $3,000 fine, $500 restitution | Entered Capitol through broken window at approximately 2:20 p.m.  Traveled to numerous areas, including Orientation Lobby, the Crypt, Upper Orientation Lobby, the Rotunda, and Supreme Court Chambers stairs.  Remained for approximately 20-25 minutes. (Doc. 24, p. 3). |
| CR-21-68-TNM<br><br>Eliel Rosa | 12 months probation, 100 hours community service, $500 restitution | Entered Capitol through Upper West Terrace Door at approximately 2:35 p.m. Went through Rotunda, Statuary Hall, towards the House Chamber. (Doc. 60, pp. 4-6) |
| CR-21-41-CJN<br><br>Thomas Gallagher | 24 months probation, 60 hours community service, $500 restitution | Seen in Capitol Visitors Center around 2:30 p.m., admonished another person not to throw a chair.  (Doc. 76, p. 3-4) |
| CR-21-355-RBW<br><br>Thomas Vinson | 60 months probation, $5,000 fine, $500 restitution, 120 hours community service | Entered Capitol on first floor at around 2:18 p.m.; recorded cell phone video depicting broken class and alarms blaring as he entered (Doc. 29, p. 3). |
| CR-21-384-CJN<br><br>Jonathan Sanders | 36 months probation, 60 hours community service, $500 restitution | Entered Capitol building after observing line of people with Oath Keepers patches on clothing form a line and go up to doors. Entered after doors were breached, took pictures and video, which he sent to friends.   (Doc. 27, pp 3-4). |
| CR-21-269-TNM<br><br>Sean Cordon | 2 months probation, $4,000 fine, $500 restitution | Entered Capitol at approximately 2:26p.m. through broken window.  Walked into Crypt and exited about 4 minutes later. Took video while walking through Capitol. (Doc. 24, pp. 3-4). |

10

| | | |
|---|---|---|
| CR-21-302-CRC<br><br>John Wilkerson, IV | 36 months probation, $2,500 fine, 60 hours community service, $500 restitution | Entered Capitol through door near the North West Courtyard, walk to and from the Rotunda, exited the building. Posted on social media, "today was a good day, we got inside the Capitol." (Doc. 18, pp. 3-4). |
| CR-21-42-ABJ<br><br>Andrew Wrigley | 18 months probation, $2000 fine, $500 restitution, 60 hours community service | Entered Capitol through Upper West Terrace door at approximately 2:38 p.m. Remained in the vestibule, took a photograph of himself and others, and left after about 1 minute. (Doc. 29, pp 3-4). |
| CR-21-363-CJN<br><br>Jennifer Parks | 24 months probation, $500 restitution, 60 hours community service | Entered Capitol from east side where doors were broken and open. Went up staircase to second floor and walked around for about 15 minutes, left when a police officer told her to do so. (Doc. 21, p. 3). |
| CR-21-355-RBW<br><br>Lori Vinson | 60 months probation, $5,000 fine, $500 restitution, 120 hours community service | Entered Capitol on first floor at around 2:18 p.m.; recorded cell phone video depicting broken class and alarms blaring as she entered. Told local news outlet her actions were "justified" and she would "do this all over again tomorrow." (Doc. 31, pp. 3-4). |
| CR-21-277-TNM<br><br>Kevin Cordon[1] | 12 months probation, 100 hours community service, $4,000 fine, $500 restitution | Entered Capitol through broken window, walked into Crypt, exited minutes after entering; made comments to news media that "[w]e're here to show them we're not having it . . . [w]e're standing up and we're taking our country back. This is just the beginning[.]" (Doc. 27, pp. 3-4). |
| CR-21-344-LDB<br><br>Brandon Nelson | 24 months probation, $2,500 fine; $500 restitution | Entered Capitol through Senate Wing Door at approximately 2:16 p.m. Texted mother about being inside Capitol, texted |

---

[1] Convicted under 18 U.S.C. § 1752(a)(1).

| | | |
|---|---|---|
| | | co-defendant about holding "the line," not backing down. (Doc. 41, pp. 3-4). |
| CR-21-344-JDB<br><br>Abram Markofski | 24 months probation, $1,000 fine; $500 restitution | Entered Capitol through Senate Wing Door at approximately 2:16 p.m.  Texted another person he stormed the Capitol and shut it down.  Present for about 1 hour and 26 minutes; texted co-defendant that Patriots don't go down without a fight. (Doc. 35, pp. 3-4). |

## Conclusion

Respectfully, Mr. Sells requests the Court impose a sentence of 12 months probation.

Respectfully Submitted,

s/ *Kyle E. Wackenheim*
KYLE E. WACKENHEIM, OBA No. 30760
ASSISTANT FEDERAL PUBLIC DEFENDER
FEDERAL PUBLIC DEFENDER
WESTERN DISTRICT OF OKLAHOMA
215 Dean A. McGee Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405-609-5930
Telefacsimile: 405-609-5932
Electronic Mail: Kyle_Wackenheim@fd.org
Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on Tuesday, January 4, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic filing to Jacob Strain, Assistant United States Attorney.

*s/ Kyle E. Wackenheim*
KYLE E. WACKENHEIM